# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL ALIOTO,

       Plaintiff-Appellant,

v

RICHARD ASTREIN, GARY ASTREIN, and
ASTREIN'S FINE JEWELRY, INC., a Michigan
corporation,

       Defendant-Appellees.

UNPUBLISHED
January 10, 2017

No. 329646
Oakland Circuit Court
LC No. 14-143452-NO

Before: BOONSTRA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's opinion and order granting summary disposition in favor of defendants pursuant to MCR 2.116(C)(10) and dismissing plaintiff's premises liability action. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of injuries plaintiff suffered when he slipped and fell. On the evening of February 9, 2013, plaintiff and his wife left their home to walk to a nearby restaurant. In order to reach the restaurant, plaintiff and his wife walked down a paved pathway known as "Willits Alley." The parties characterize the pathway differently; plaintiff describes it as a pedestrian walkway that is the sole point of access to several businesses, while defendants describe it as a public alleyway used largely by commercial. The parties agree that Willits Alley, whatever its character, is owned by the City of Birmingham. As plaintiff and his wife were walking in Willits Alley, plaintiff fell near the rear of a building owned by defendants Richard and Gary Astrein, whose business, defendant Astrein Fine Jewelry, Inc., was also located there.[1]

Plaintiff filed suit against defendants and a tenant of the same building, Oliver's Trendz of Birmingham, LLC (Oliver's Trendz). Plaintiff alleged that his fall was caused by black ice

---

[1] We will refer to the three defendants collectively as "defendants."

-1-

that had accumulated from a downspout affixed to the building that directed water into Willits Alley. Plaintiff ultimately resolved his claims against Oliver's Trendz through case evaluation.

After the close of discovery, defendants filed a motion for summary disposition. The filing occurred one day after the deadline for the filing of dispositive motions as set by the trial court's scheduling order. The trial court entered an order the following day striking defendants' motion as untimely. Defendants then filed a motion for leave to file an untimely motion or, alternatively, to amend the scheduling order. The trial court granted the motion on July 29, 2015, and ordered that plaintiff's response brief be filed by August 12, 2015. The order also stated that if motions and briefs were not timely filed, "the Court will assume there is no law to support that party's position." However, plaintiff did not file his response brief until August 17, 2015.

A hearing was held on defendants' motion on August 26, 2015. Defendants argued that it was undisputed that they had no duty to maintain the alley owned by the City of Birmingham. Further, to the extent that defendants owed a duty to prevent injury to pedestrians as a result of water flowing from a downspout affixed to their building, they were not liable for plaintiff's injury for two reasons: (1) the lease agreement between defendants and Oliver's Trendz had assigned Oliver's Trendz the duty of keeping adjoining streets and alleys clean and free from snow and ice, including salting when necessary; and (2) their downspout system was compliant with the City of Birmingham's building code and there was no evidence that the release of water into the alley was a breach of any duty. Defendants also argued that any hazard created was not unavoidable, as the alley was sufficiently wide that a pedestrian did not need to walk across the ice accumulation.

Plaintiff responded that his claim was not based on a failure to salt or otherwise maintain the alley, but upon the fact that defendants' downspout system created an unnatural accumulation of ice and an unavoidable hazard. Plaintiff argued that his expert, an engineer, had concluded that defendants' downspout system violated relevant building codes that prohibited the discharge of water in a manner that creates a public nuisance.

The trial court issued an opinion and order granting defendants' motion on August 31, 2015. The trial court noted that the lease between defendants and Oliver's Trendz provided that Oliver's Trendz was responsible for maintaining the adjoining sidewalks, drives, and alleys free of, among other things, snow and ice, but that defendants were responsible for maintaining the roof and outside walls of the building. The trial court further noted that Willits Alley was owned by the City of Birmingham.

Analyzing plaintiff's complaint, the trial court determined that it sounded in premises liability because plaintiff alleged that "defendants negligently allowed an unreasonably dangerous condition to exist on the property where he sustained an injury." The trial court concluded:

> Viewing the evidence in the light most favorable to the non-moving party, the Court finds that there is no genuine issue of material fact. Specifically, this Court finds that it is undisputed that (1) the City of Birmingham owns Willits Alley where the incident allegedly occurred; (2) the City of Birmingham typically

performs snow plowing and salting procedures for Willits Alley; and (3) [Oliver's Trendz] executed the Lease with the Astreins for the building located at 138 W. Maple. In the end, plaintiff failed to establish a genuine issue of material fact by presenting any evidence to support that defendants (as the owner, possessor, and controller) created or allowed a hazardous condition to exist on the owned premises, which caused plaintiff to be injured. *Stitt, supra.* Even though plaintiff alleges that the building's downspout caused the allegedly hazardous condition to form or violated building codes, he failed to attach any documentation or expert testimony supporting such a conclusion. Further, even though the Lease purports to assign maintenance responsibility (e.g., salting and plowing) of the alley to [Oliver's Trendz] the undisputed facts show that the City of Birmingham assumed that responsibility as the owner of the alley. Summary disposition pursuant to MCR 2.116(C)( 10) is, therefore, appropriate.

The trial court also stated that it would not consider the response brief filed by plaintiff because it was untimely. Nonetheless, the trial court did make reference to plaintiff's response brief and the documentary evidence that plaintiff had submitted in opposition to the motion.

The trial court later denied plaintiff's motion for reconsideration, which was premised on the trial court having erred by failing to accept plaintiff's late response brief. The trial court found that it had not abused its discretion in declining to accept plaintiff's untimely filing, and further that any alleged error had been cured when it allowed plaintiff to orally assert arguments that were contained in the untimely response brief. This appeal followed.

## II. SUMMARY DISPOSITION

Plaintiff argues that the trial court erred by granting summary disposition in favor of defendants (regardless of whether it erred by failing to consider his untimely response brief). We disagree.

We review de novo a trial court's decision on a motion for summary disposition. *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). We consider the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). All reasonable inferences are to be drawn in favor of the nonmovant, *Dextrom v Wexford County*, 287 Mich App 406, 415; 789 NW2d 211 (2010). If it appears that the opposing party is entitled to judgment, the court may render judgment in favor of the opposing party. MCR 2.116(I)(2); *Bd of Trustees of Policemen & Firemen Retirement Sys v Detroit*, 270 Mich App 74, 77-78; 714 NW2d 658 (2006). A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

To establish a prima facie case of negligence sufficient to survive summary disposition, a plaintiff must present evidence sufficient to establish at least a genuine issue of material fact on four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) proximate cause, and (4) damages. *Buhalis v Trinity Continuing Care Svcs*, 296 Mich App 685, 693; 822 NW2d 254. The existence of a legal duty is a question of law. *Id*. With regard to premises liability, the possessor, owner, or controller of land generally owes a duty to invitees to "exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp, Inc*., 464 Mich 512, 516; 629 NW2d 384 (2001). This duty does not extend to open and obvious dangers. *Id*. at 516-517. The open and obvious doctrine is an "integral part" of the definition of the duty owned by a possessor, owner, or controller of land. *Id*. at 516. A landowner is charged with exercising reasonable care in the construction and maintenance of a building to prevent injury to persons lawfully using an adjoining public street. *Grimes v King*, 311 Mich 399, 412; 18 NW2d 870 (Mich 1945); see also M Civ JI 19.09.

Plaintiff argues that the trial court erred by deciding defendants' motion on causation grounds, rather than on the existence of a duty and the breach of that duty, the grounds that were argued in defendants' motion. We disagree with plaintiff's characterization of the trial court's holding. The trial court stated that "plaintiff failed to establish a genuine issue of material fact by presenting any evidence to support that defendants (as the owner, possessor, and controller) created or allowed a hazardous condition to exist on the owned premises, which caused plaintiff to be injured." Although the trial court mentioned causation, it is clear that the trial court found that plaintiff had failed to provide sufficient proof of a duty owed by defendants (as owners of the land) to plaintiff, or the breach of that duty. This conclusion is buttressed by the trial court's reference to the duties assumed by the City of Birmingham as the owner of Willits Alley, and the duties of Oliver's Trendz as referenced in the lease.

Plaintiff explicitly stated before the trial court, and continues to state on appeal, that his claim against defendants arises not from any failure to salt or remove the icy condition from Willits Alley, but from their control over the downspout system, and its associated discharge of water into the alley, the freezing of which created ice. Thus, plaintiff's claim implicates the alleged duty owed by defendants under *Grimes*, 311 Mich at 412, i.e., the duty to maintain the premises in reasonable repair so as to avoid injury to passersby on a public street. The open and obvious doctrine applies to cases involving a common-law duty to maintain premises so as to avoid injury to others. *Joyce v Rubin*, 249 Mich App 231, 236; 642 NW2d 360 (2002).

Plaintiff has presented this Court with no authority, and this Court has found none, for the proposition that a landowner is liable whenever discharging *any* water onto a public street that may freeze and form ice in winter; in fact, our Supreme Court stated as long ago as in *Gavett v City of Jackson*, 109 Mich 408, 411; 67 NW 518 (1896), that "[p]eople have the right to erect buildings from which the water must flow to the ground, and if it comes faster than the ground can absorb it, it must flow onto the sidewalks." The question then becomes whether this particular discharge of water, when combined with freezing temperatures, constituted a breach of defendants' duty to maintain their premises, keeping in mind that the open and obvious doctrine is part of this duty. We hold that it did not.

-4-

"The test to determine if a danger is open and obvious is whether an average user with ordinary intelligence would have been able to discover the danger and risk presented upon casual inspection." *Joyce*, 249 Mich App at 238 (quotation marks, brackets, and citation omitted). The test is an objective one that asks if a reasonable person would foresee the danger. *Id*.

Our Supreme Court has held that "black ice" is "open and obvious when there are 'indicia of a potentially hazardous condition' " present. *Janson v Sajewski Funeral Home, Inc*, 486 Mich 934, 935; 782 NW2d 201 (2010), quoting *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 483; 760 NW2d 287 (2008). Here, plaintiff stated in his deposition that it was a cold February evening when he fell, although he denied knowing the exact temperature. Plaintiff also admitted that, after he fell, he could see ice and snow that had accumulated in an area around the downspout within a foot of where he had fallen, and further stated that there was enough lighting to see where he was walking. Plaintiff had also admitted to using Willits Alley on a regular basis during his twelve-year residency in Birmingham. Finally, the photographs provided to the trial court by both parties show that the downspout and a nearby drain were not obscured or hidden from passersby. We thus conclude that sufficient indicia of a potentially hazardous condition were present to enable a reasonable person to foresee the danger. *Joyce*, 249 Mich App at 238.

Further, the icy condition possessed no "special aspects," i.e., was not so extreme as to create an unusual or inordinate risk of harm, nor was it effectively unavoidable. *Joyce*, 249 Mich App at 240-41, quoting *Lugo*, 464 Mich at 517. The photographs indicate that Willits Alley was sufficiently wide to avoid the area between the downspout and the drain. A slippery condition on a walkway that can be avoided by an alternate route does not possess special aspects that remove it from the open and obvious doctrine. *Id*. at 242-243.

We therefore conclude that defendants, as the owners of the building and downspout that directed water into the alley, did not breach any duty they may have owed to plaintiff and that the trial court did not err by granting summary disposition in favor of defendants pursuant to MCR 2.116(C)(10). See *Allison*, 481 Mich at 425.

### III. PLAINTIFF'S UNTIMELY RESPONSE

Plaintiff also argues that the trial court erred by failing to consider his untimely-filed response brief. We disagree. "This Court reviews for an abuse of discretion a trial court's decision to decline to entertain motions filed after the deadline set forth in its scheduling order." *Kemerko Clawson, LLC v RXIV, Inc*, 269 Mich App 347, 350; 711 NW2d 801 (2005).

Plaintiff argues that the trial court's decision was a sanction, and was unnecessarily severe. However, this Court has stated that discovery sanctions are not equivalent to a trial court's decision not to entertain motions filed after the expiration of a scheduling order. *Id*. at 352. The trial court had no obligation, as it would have had with a discovery sanction, "to make a determination whether the specific sanction imposed was just under the circumstances." *Id*.

Further, the trial court was within its discretion to not consider plaintiff's untimely response. Plaintiff was aware that the trial court had stricken defendants' original motion for being one day late, and had adjusted the scheduling order in response to defendants' motion.

-5-

Although the trial court did not similarly strike plaintiff's response prior to the hearing, nothing prevented plaintiff from seeking to ensure that the trial court would consider his late-filed response. The scheduling order clearly indicated how the trial court would treat late-filed motions and briefs.[2] We hold that the trial court did not abuse its discretion. *Id*.

Further, even if the trial court erred, its error was harmless. As the trial court noted in denying plaintiff's motion for reconsideration, it allowed plaintiff, at the summary disposition hearing, to present oral argument that was consistent with its response brief. It also addressed plaintiff's arguments during the hearing and in its opinion and order. Finally, although plaintiff's untimely-filed response does present argument on the issue of openness and obviousness, that argument is not persuasive, even viewing the evidence (which consists of the same deposition testimony, and similar photographs, as were filed in support of defendants' motion) in the light most favorable to the plaintiff. See *Allison*, 481 Mich at 425; *Liparoto Constr, Inc*, 284 Mich App at 29. Although plaintiff's expert opined that defendants' downspout created a hazardous condition, his letter does not address whether it was open and obvious, unreasonably dangerous, or effectively unavoidable. In fact, plaintiff's expert's letter indicates that snow had fallen during the previous night, arguably providing more evidence of indicia of a potentially hazardous condition. See *Ververis v Hartfield Lanes*, 271 Mich App 61, 66; 718 NW2d 61 (2006) (noting that a snowy condition provides notice to pedestrians of potentially slippery conditions). In any event, we are satisfied that even if the trial court had accepted plaintiff's untimely response to defendants' motion, its ultimate decision on defendants' motion would not have been altered, nor would it have affected our decision on appeal.

Affirmed. As the prevailing party, defendants may tax costs. MCR 7.219(A).

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly

---

[2] We note that the trial court's July 29, 2015 scheduling order stated, "If motions and *supporting* briefs are not timely filed, the Court will assume there is no law to support that party's position." (Emphasis added). However, the scheduling order referred earlier, in setting a deadline for plaintiff's response, to "[t]he non-moving party's *responsive motion and supporting brief*." While this language may have been inartful and technically inaccurate, it was sufficient to put both parties on notice of the consequences for filing late briefs.